IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Timothy W. Humphries, | : | Case No. 1:10-cv-749 |
| | : | |
| Plaintiff, | : | Chief Judge Susan J. Dlott |
| | : | |
| v. | : | Order Granting Defendants' Motion in |
| | : | Limine and Motion to Strike Affidavit of |
| David A. Chicarelli, *et al.*, | : | Bryan Green and Request for Protective |
| | : | Order |
| Defendants. | : | |

This matter is before the Court on Defendants' Motion in Limine and Motion to Strike Affidavit of Bryan Green and Request for Protective Order (Doc. 56).  In this case, Plaintiff Timothy W. Humphries, the current mayor of the Defendant City of Carlisle, has sued the City of Carlisle and several of its former and current officers and employees.  Humphries alleges generally that the individual defendants acted to discredit and bring scorn upon him after he was elected mayor in November 2007.  In the pending Motion, Defendants David A. Chicarelli, the City of Carlisle, Dustin Moore, Sherry Callahan, Steven Badger, Jerry Ellender, and Ronald Hovell challenge the testimony offered and expected to be offered by Bryan L. Green, a member of the city council for the City of Carlisle, on behalf of Humphries.

For the reasons that follow, the Court will **GRANT** Defendants' Motion.  The Court will strike the Affidavit of Bryan L. Green (Doc. 56-2 at 24–27) from the record and will prohibit Green and other city council members from testifying as to the privileged matters discussed at the December 22, 2009 and the spring 2010 meetings addressed herein.

**I.     BACKGROUND**

The facts underlying the current dispute are not in contention.  Defendant Chicarelli is the law director for the City of Carlisle and Defendant Callahan is its city manager.  Bryan Green was elected to the city council in November 2009.  Green's disputed testimony in this case concerns two meetings he attended with Chicarelli, Callahan, and city council members.

On December 22, 2009, Green attended a closed-door executive session of the city council when he was a council-member elect, but had not been sworn into office.  Chicarelli invited Green and two other council members-elect to attend the meeting because they were "taking office in eight or nine days" and would "have to deal[ ] with these issues."  (Chicarelli Dep. 104.)[1]  Green understood that he and the others were being invited "as incoming council members."  (Green Dep. 40–41.)[2]  During the executive session, Chicarelli discussed an investigation into alleged criminal wrongdoing by Plaintiff Humphries and the legal ramifications of the allegations.  (Green Aff. ¶¶ 1–8.)  The allegations made against Humphries are not relevant to the resolution of the pending motion and will not be specifically explained.

In the spring of 2010, after Green had become a council member, Green requested a meeting with Chicarelli in his capacity as the law director.  (Green Dep. 44–46.)  Although Green did not request that others attend the meeting, the meeting was attended by two other city council members and the city manager, in addition to Green and Chicarelli.  (Green Aff. ¶ 9; Green Dep. 44–46.)  The city council members asked Chicarelli about his legal advice and opinions concerning Humphries's alleged wrongdoing.  (Callahan Aff. ¶ 9; Green Dep. 48.)[3]  A quorum of city council was not present.  (*Id.* at 59.)

---

[1] The Chicarelli Deposition is found at Doc. 80.
[2] The Green Deposition is found at Doc. 60.
[3] The Callahan Affadavit is found at Doc. 56-2 at 32–33.

2

On September 28, 2010, approximately one month before Humphries filed his initial Complaint, Green signed a sworn affidavit. (Green Aff.) In his Affidavit, Green describes communications by Chicarelli at the December 22, 2009 city council executive session and at the spring 2010 meeting about investigations into alleged criminal wrongdoing by Plaintiff Humphries. (*Id.*) Plaintiff Humphries did not produce the Green Affidavit to the Defendants after it was signed. Instead, in March 2011, Plaintiff Humphries identified Bryan Green in his Initial Disclosures as an individual likely to have discoverable information that he might use to support his claims. (Doc. 56-2 at 20–23.) Humphries stated in the Initial Disclosures that Green "[w]ill testify regarding statements made by Defendants Chicarelli and Callahan." (*Id.*) Humphries then disclosed the existence of the Green Affidavit in Plaintiff's Initial Disclosures Supplemental, dated March 30, 2011, as a document being withheld as protected by the attorney-client, work product, or other privilege doctrine. (Doc. 56-2 at 28–29.) Defendants obtained the Green Affidavit when Humphries introduced it as an exhibit during Chicarelli's deposition on March 29, 2012. (Chicarelli Dep. 102.) Subsequently, Defendants deposed Green on July 3, 2012. (Green Dep. 1.)

Defendants filed the pending Motion on August 30, 2012. They ask the Court to strike the Green Affidavit and for a protective order to preclude any council members from testifying as to discussions or information received in executive sessions and/or subject to privilege. Humphries disputes that any privilege applies to the testimony of Green or other council members. This matter has been fully briefed and is ripe for adjudication.

## II.   ANALYSIS

The Court will begin by analyzing whether matters at the December 22, 2009 executive session of the city council are protected from disclosure. The parties first dispute whether city

council was entitled to hold the executive session. The Charter for the City of Carlisle authorizes the city council to hold executive session meetings where such meetings would be permitted under Ohio law. The Charter states as follows:

> Section 4.10 Procedure.
>     (a) <u>Meetings</u>. The Council shall meet regularly at least twice in every month at such times and places as the Council may prescribe by rule. Special meetings may be held on the call of two ( 2) or more members. All meetings where official business is consummated shall be open to the public except as otherwise provided by the general laws of Ohio.
>
> \* \* \* \*
>
> Section 9.03 Open Meetings.
>     The general laws of Ohio pertaining to meetings of the Muncipality's public body shall apply under this Charter.

(Doc. 56-1 at 28, 37.) The Charter does not define the phrase "where official business is consummated." The Charter provides however that the city council has the "legislative powers" of the municipality, including the authority to pass ordinances and resolutions, and has the duty to vote to appoint one of its members to the position of deputy mayor. (Doc. 56-1 at 23, 24, 29.)

Ohio's Open Meeting Act ("OMA") requires "public officials to take official action and to conduct all deliberations upon official business only in open meetings unless the subject matter is specifically excepted by law." Ohio Rev. Code § 121.22(A). The term "deliberations" is not defined in the statute, but an Ohio court has held that a public body deliberates "by thoroughly discussing all of the factors involved [in a decision], carefully weighing the positive factors against the negative factors, cautiously considering the ramifications of its proposed action, and gradually arriving at a proper decision which reflects th[e] legislative process." *Cincinnati Enquirer v. Cincinnati Bd. of Educ.*, 192 Ohio App. 3d 566, 570, 949 N.E.2d 1032 (2011) (citation omitted). The same court explained that deliberations involve more than information-gathering, investigation, and fact-finding. *Id.*; *see also Ohio ex rel. Hardin v.*

4

*Clermont Cty. Bd. of Educ.*, 972 N.E.2d 115, 123 (Ohio App. 2012) (same). The OMA does not prevent public officials from meeting privately with their attorney to seek and receive legal advice. *Hardin*, 972 N.E.2d at 124; *Cincinnati Enquirer*, 192 Ohio App. 3d at 570. A court applying the *Cincinnati Enquirer* decision instructed that "an executive session is not a 'meeting' as defined by the Act, and therefore not required to be held in public, where no deliberations take place and no decisions are reached." *Schmidt v. Village of Newtown*, No. C-110470, 2012 WL 728052, at *6 (Mar. 7, 2012)

The OMA provides an exception to the public meeting requirement for meetings held for the "sole purpose of the consideration of" specified matters, including "[t]o consider the appointment, employment, dismissal, discipline, promotion, demotion, or compensation of a public employee or official, or the investigation of charges or complaints against a public employee [or] official . . . unless the public employee [or] official . . . requests a public hearing." Ohio Rev. Code § 121.22(G)(1). However, the public body cannot "hold an executive session for the discipline of an elected official for conduct related to the performance of the elected official's official duties or for the elected official's removal from office." *Id.*

Based on the limited facts in the record, the Court concludes that city council had authority to hold the December 22, 2009 meeting in executive session. To begin, there is no evidence that city council consummated official business or engaged in deliberations during the executive session as those terms are used in the City of Carlisle Charter or the OMA. There is no evidence that the city council took legislative action during the session. Callahan, the city manager, stated in her Affidavit she requested the executive session in order to discuss with Chicarelli the "legal implications involving investigations" of Humphries and litigation threatened by Humphries. (Callahan Aff. ¶¶ 4, 6.) Green concurred in his Affidavit that during

5

the executive session Chicarelli discussed information pertaining to an ongoing criminal investigation of Humphries. (Green Aff. ¶¶ 1, 7.) Green stated that Chicarelli also discussed advice he had given to Humphries, his opinion as to potential charges against Humphries, and his opinion whether Humphries could be subjected to a recall petition. (*Id.* ¶¶ 2–8.) Because city council was permitted to meet privately with the city attorney to seek or receive legal advice, the December 22, 2009 executive session did not violate the Ohio OMA. *See Hardin*, 972 N.E.2d at 124; *Cincinnati Enquirer*, 192 Ohio App. 3d at 570.

Additionally and relatedly, the information discussed at the December 22, 2009 is protected by the attorney-client privilege. The Sixth Circuit has identified the elements of the attorney-client privilege as follows:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection is waived.

*Reed v. Baxter*, 134 F.3d 351, 355–56 (6th Cir. 1998); *see also Humphreys, Hutcheson and Moseley v. Donovan*, 755 F.2d 1211, 1219 (6th Cir. 1985) (stating that the privilege protects "communications between attorney and client").[4] "The privilege is intended to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice." *Swidler & Berlin v. United States*, 524 U.S. 399, 403 (1998) (internal quotation and citation omitted). Courts apply the privilege "only when 'necessary to achieve its purpose' and only to protect legal disclosures that

---

[4] Plaintiff asserts federal subject matter jurisdiction and pleads claims arising in both federal and state law. (Doc. 33 at 3.) The federal common law of privilege applies in this situation. *Nilavar v. Mercy Health Sys.-W. Ohio*, 210 F.R.D. 597, 601 (S.D. Ohio 2002) ("[W]here there are both federal and supplemental state law claims at issue, the federal common law of privileges controls as to the entire case[.]").

6

'might not have been made absent the privilege.'" *Cooey v. Strickland*, 269 F.R.D. 643, 648 (S.D. Ohio 2010) (quoting *Fisher v. United States,* 425 U.S. 391, 403 (1976)).

"[A] municipality can assert the attorney-client privilege in civil proceedings." *Ross v. City of Memphis,* 423 F.3d 596, 603 (6th Cir. 2005).  The "privilege helps insure that conversations between municipal officials and attorneys will be honest and complete." *Id.* at 602.  When the privilege applies, "generally in conversations between municipal officials and the municipality's counsel, the municipality . . . is the client." *Id.* at 605.

The attorney-client privilege applies to the communication made by Chicarelli at the closed-door executive session under the standards set forth above.  Chicarelli participated in the meeting in his role as the law director.  Chicarelli explained the legal ramifications of allegations against Humphries and offered advice in that regard to members and members-elect of city council.  (Green Aff. ¶¶ 1–8.)

The Court rejects Humphries's argument that attorney-client privilege did not apply based on Chicarelli's curious deposition testimony that he only represented the City of Carlisle, at the direction of the city manager, and not the city council.  (Chicarelli Dep. 14–17.)  It is undisputed that Chicarelli's employment contract specified that he "contracted to be the legal advisor, attorney and counsel for the City, and for all the officers, departments, divisions, bureaus, boards, commissions and bodies of the City in connection with municipal affairs." (Chicarelli Dep. 14–17 & Ex. 1.)  The city council is not a separate legal entity from the municipality itself for purposes of applying the attorney-client privilege. *Cf. Mollette v. Portsmouth City Council*, 169 Ohio App. 3d 557, 563, 863 N.E.2d 1092 (2006) (stating that a city council is not *sui juris*).

Additionally, the fact that Green was only a city council member-elect, and not a city council member, when he attended the December 22, 2009 executive session, does not waive the privilege accorded to the executive session or for attorney-client privilege.  Chicarelli invited the council members-elect to attend the meeting because council would be addressing issues the members-elect would be dealing with when they were sworn into office days later.  (Chicarelli Dep. 104.)  Green knew he was invited to attend the executive session in his position as an incoming council member.  (Green Dep. 40–41.)  Ohio courts have stated in dicta that "selected persons" invited by public official are permitted to attend executive sessions.  *Hardin*, 972 N.E.2d at 119 (quoting *Thomas v. Bd. of Trustees*, 5 Ohio App. 2d 265, 268, 215 N.E.2d 434 (1966)); *see also Chudner v. Cleveland City Sch. Dist.*, No. 68572, 1995 WL 472805, at *2 (Ohio App. Aug. 10, 1995) (stating that certain persons can be invited to an executive session).

In this case, the members-elect were analogous to agents of the City of Carlisle and their presence does not defeat the attorney-client privilege.  *Cf. In re Dismissal of Osborn*, No. CA-1009, 1992 WL 214527, at *2 (Ohio App. Aug. 20, 1992) (finding that the presence of a stenographer at a board meeting held in executive session to obtain advice from legal counsel did not waive the attorney-client privilege).  This conclusion is consistent with the principle finding waiver of the attorney-client privilege based on disclosure to a third party.  A client usually demonstrates an intention that his communication with his attorney need not remain secret when he shares the communication with a third party. *Ohio v. Post,* 32 Ohio St. 3d 380, 385–86, 513 N.E.2d 754 (1987) (citing 8 Wigmore, *Evidence* (McNaughten Rev. 1961) at 599, section 2311).  However, permitting Green to participate at the executive session hearing does not demonstrate the City Council's intention to make the executive session discussions a matter of public record.

In regards to the spring 2010 meeting, at which time Green was a member of city council, the attorney-client privilege applies. Humphries contends that Green is entitled to waive the attorney-client privilege because it belongs to him. The Court again disagrees. "[G]enerally in conversations between municipal officials and the municipality's counsel, the municipality, not any individual officers, is the client." *Ross*, 423 F.3d at 605. The individual officer can only claim the privilege personally if he had first clearly indicated to the lawyer that he sought legal advice in his individual capacity. *Id.* at 605–06. Humphries has not established that Green clearly indicated that he sought personal legal advice during the spring 2010 meeting. Green requested the meeting with Chicarelli in his capacity as the city law director. (Green Dep. 44–46.) Although Green did not request that others attend the meeting , the meeting was attended by Green, two other City Council members, the city manager, and Chicarelli. (Green Aff. ¶ 9; Green Dep. 44–46.) All three Council members asked questions of Chicarelli relating to the legal advice and statements he had made as the law director about Humphries, and about how he "handled himself" at the December 2009 executive session. (Callahan Aff. ¶ 9; Callahan Dep. 173.)[5] The Court concludes that the attorney-client privilege regarding the Spring 2010 meeting belonged to the City and not to Green personally. Green cannot unilaterally waive the privilege on behalf of the City.

---

[5] The Callahan Deposition is found at Doc. 58.

### III.    CONCLUSION

For the foregoing reasons, Defendants' Motion in Limine and Motion to Strike Affidavit of Bryan Green and Request for Protective Order (Doc. 56) is **GRANTED**.  Further, the Green Affidavit (Doc. 56-2 at 24–27) shall be stricken from the record and Green and other city council members shall be prohibited from testifying as to the privileged matters discussed at the December 22, 2009 and the spring 2010 meeting addressed herein.

IT IS SO ORDERED.

S/Susan J. Dlott_____
Chief Judge Susan J. Dlott
United States District Court